USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/4/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
JEREMY BASCOM, individually and on behalf of :
his minor children, M.B. and N.B., :
                                 Plaintiffs, :
                                       :
                  -against-                   :       23-CV-10898 (VEC)
                                       :
CITY OF NEW YORK, NEW YORK CITY        :         OPINION
DEPARTMENT OF EDUCATION, NEW YORK :
CITY DEPARTMENT OF YOUTH AND COM- :
MUNITY DEVELOPMENT, NEW YORK EDGE, :
and JOHN/JANE DOE 1-5, :
                                Defendants. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Jeremy Bascom ("Plaintiff"), individually and on behalf of his minor children M.B.[1] and N.B. (the "Children") (collectively, "Plaintiffs"), filed this action pursuant to 42 U.S.C. § 1983 and state law against Defendants City of New York (the "City"), New York City Department of Education ("DOE"), New York City Department of Youth and Community Development ("DYCD")[2], New York Edge ("Edge"), and John/Jane Doe 1-5 (collectively, "Defendants"). This case arises out of an incident that occurred on November 10, 2022, when the Children's mother absconded with them. Compl. ¶¶ 20–21, Dkt. 1. Plaintiffs bring Section 1983 claims against the City for failing properly to investigate the abduction and failing to train and

---

[1]     Rule 5.2(a)(3) of the Federal Rules of Civil Procedure requires that any court submissions referring to a minor must include only the minor's initials. Plaintiff included the full names of his minor children in the Complaint and his opposition brief. The Court will refer to the children either by their initials or as the "Children."

[2]     Plaintiffs named DYCD as a Defendant. The Court grants Defendants' motion to dismiss; however, DYCD would be dismissed as a Defendant regardless because, as an administrative arm of the City, DYCD does not have a legal identity separate from the City and, as such, it cannot be sued. *See Omnipoint Commc'ns, Inc. v. Town of La-Grange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village.").

supervise NYPD officers and against DOE, DYCD and Edge for failing to monitor the Children. Finally, Plaintiffs bring a variety of state law claims against all Defendants.

Defendants City, DYCD, and DOE[3] moved to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def. City. Mot., Dkt. 15; DOE Letter, Dkt. 41. Plaintiffs opposed the motion. *See* Pl. Opp., Dkt. 24. Defendant Edge answered. *See* Answer, Dkt. 19. Defendants' motion to dismiss is GRANTED.[4]

## I.     BACKGROUND[5]

Plaintiff has two children, M.B. and N.B., with non-party Christina Young-Dawkins ("Young-Dawkins"). Compl. ¶ 10. In July 2022, Young-Dawkins's unsupervised visitation with the Children was terminated following an incident in which she refused to return the Children to Plaintiff. *Id.* ¶ 12. In October 2022, Plaintiff obtained temporary physical and legal custody of the Children. *Id.* ¶ 19.

In September 2022, Plaintiff enrolled the Children in an after-school program at their elementary school that was operated by Edge and DYCD. *Id.* ¶ 14. Plaintiff informed the school's

---

[3]     DOE initially joined Edge's Answer, Dkt. 19. Subsequently, DOE joined the City and DYCD's motion to dismiss. *See* Dkt. 41. Edge and DOE had asserted cross claims against the City and DYCD in their Answer; those claims were, however, withdrawn by a stipulation between the parties. *See* Dkt. 30.

[4]     Although Edge did not move to dismiss the Complaint, the Court can dismiss the claims against Edge *sua sponte* "because the issues concerning [Edge] are substantially the same as those concerning the other defendants, and [Plaintiffs] had notice and a full opportunity to make out [their] claim[s]." *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (citing *Hecht v. Com. Clearing House*, 897 F.2d 21, 26 n.6 (2d Cir. 1990)). *See also Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (affirming *sua sponte* dismissal for failure to state claim against a non-moving defendant where other defendants filed a motion to dismiss, and plaintiff responded); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11-CV-0846, 2012 WL 1940845, at *2 (E.D.N.Y. May 29, 2012) ("*Sua sponte* dismissal is appropriate where, as here, plaintiffs['] claims against a non-[moving] defendant . . . parallel those claims made against a [moving] defendant."); *Phila. Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 18-CV-0217, 2019 WL 1258918, at *9 (D. Conn. Mar. 18, 2019) ("A district court may dismiss a complaint with respect to a non-moving defendant *sua sponte* where the issues are substantially the same as those deemed to warrant dismissal, and the plaintiff was given notice of the grounds for dismissal and an opportunity to be heard.").

[5]     The well-pled facts alleged in the Complaint are assumed true for purposes of evaluating Defendants' motion to dismiss. *See Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014). The facts are taken from the Complaint and any documents incorporated by reference.

administration and Edge that Young-Dawkins was not authorized to pick up the Children or be alone with them. *Id.* ¶¶ 15–17.

On November 10, 2022, Young-Dawkins went to the Children's elementary school and asked to see the Children, who were in the Edge/DYCD after-school program. *Id.* ¶ 20. The Children met their mother unsupervised by any Edge/DYCD staff. *Id.* Young-Dawkins removed the Children from the facility, passing both a police officer, who was tasked with signing people into the building, and a safety agent, who sat near the entrance. *Id.* ¶ 21. The Edge/DYCD staff did not realize that the children were missing until after dismissal. *Id.* ¶ 22. The New York Police Department ("NYPD") was alerted and responded to the school. *Id.* ¶ 24. They were unable to locate the Children. *Id.*

On November 12, 2022, 103rd precinct police officers told Plaintiff that they could not proceed to investigate the missing children because this was a case of parental interference. *Id.* ¶ 26. The police advised Plaintiff to file a missing persons report, which he did. *Id.* Police officers from the 113th precinct discussed the report with Plaintiff. *Id.* They transferred the matter to the NYPD's missing persons unit; officers in that unit told Plaintiff that the 103rd precinct closed his case without conducting a proper investigation. *Id.* ¶ 28.

On December 23, 2022, the NYPD missing persons unit notified Plaintiff that Young-Dawkins was in Chicago. *Id.* ¶ 31. On July 8, 2023, the Chicago Department of Children & Family Services ("DCFS") informed Plaintiff that his children had been located. *Id.* ¶ 33. DCFS took custody of the Children until Plaintiff retrieved them. *Id.*

## DISCUSSION

### II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d

3

271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  The Court is not required to credit "mere conclusory statements", which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), 679.

### III. Plaintiffs' Federal Claims

Plaintiffs assert the following federal claims: (1) a Section 1983 claim against the City for violating his right to substantive due process under the Fourteenth Amendment when it failed to properly investigate the incident and failed to train and supervise the NYPD officers; and (2) a Section 1983 claim against the DOE, DYCD, and Edge for violating his due process rights when they failed properly to investigate the incident and failed to train and supervise their employees.  Compl. ¶¶ 34–59.

To state a claim under Section 1983, Plaintiffs must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law.[6]  *West v. Atkins*, 487 U.S. 42, 48–49 (1988).

#### A. Count Two: Failure to Protect

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . .

---

[6]     The Complaint is brought against Defendants John/Jane Doe 1–5, but the Complaint does not allege the personal involvement of any unidentified City employee.  In order to state a claim under Section 1983, a complaint must allege the "personal involvement of defendants in alleged constitutional deprivations." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  Plaintiffs do not allege that they directly suffered harm at the hands of any government actor[7]; rather, they allege that the Children were taken by Young-Dawkins, a private actor, and that the government actors failed to prevent and investigate the abduction.

In *DeShaney v. Winnebago County Department of Social Services,* the Supreme Court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." 489 U.S. 189, 195 (1989).  Because the Due Process Clause "is phrased as a limitation on the State's power to act," *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007), it "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual," *DeShaney*, 489 U.S. at 196.  A state's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

The Second Circuit has recognized two exceptions to the rule that there is no affirmative right to government aid.  *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).  The first exception covers acts of private violence where the state had a "special relationship" with the victim.  *Id.* (citing *Ying Jing Gan v. City of New York,* 996 F.2d 522, 533 (2d Cir. 1993)).  The second exception covers situations in which the state or its agents "in some way had assisted in creating or increasing the danger to the victim." *Id.* (quoting *Dwares v. City of New York,* 985 F.2d 94, 98–99 (2d Cir. 1993)).  Even if Plaintiffs' claim falls within one of these ex-

---

[7] Because the Court concludes that Plaintiffs have failed to state a constitutional violation under the Fourteenth Amendment, it need not decide whether the Edge staff were state actors and will instead assume that they were for the purpose of deciding this motion.

ceptions, they still must also show that the state actors' "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 848 n. 8 (1998)).

### 1. Special Relationship

A special relationship exists "when the State takes a person into its custody and holds him there against his will." *DeShaney*, 489 U.S. at 199–200. In such circumstances, "the Constitution imposes upon [the state] a corresponding duty to assume some responsibility for his safety and general well-being." *Id*. (citation omitted). The Second Circuit has "focused on involuntary custody as the linchpin of any special relationship exception." *Matican*, 524 F.3d at 156 (citation omitted). Accordingly, the special relationship exception only applies in instances where the plaintiff is incarcerated, involuntarily institutionalized, or in foster care. *See Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 141 (2d Cir. 1981).

The Second Circuit has not squarely addressed whether a special relationship exists as a result of compulsory school attendance. Courts in the circuit, however, "have generally held that [e]ven in light of compulsory [education] attendance laws, no special relationship is created between students and school districts such that school districts take on any such duty to protect students from the private actions of others." *H.B. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *10 (S.D.N.Y. Sept. 27, 2012) (citations omitted). Even if that were not the case, the Complaint makes clear that the Children were taken from an after-school program in which they were voluntarily enrolled.

Because the Complaint does not allege that there was a special relationship between Plaintiffs and the state actors, this exception does not apply.

### 2. State-Created Danger

Under the state-created danger exception, "state actors may be liable under section 1983

6

if they affirmatively created or enhanced the danger of private violence." *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009) (citation omitted). Liability "turns on whether the state conduct contributing to the victim's injury was 'affirmative,' which can give rise to liability, or 'passive,' which cannot give rise to liability." *Hernandez v. City of New York*, No. 18-CV-6418, 2022 WL 316938, at *8 (S.D.N.Y. Feb. 2, 2022) (citations omitted). The Second Circuit has recognized that treading this "fine line" can "sometimes be difficult." *Pena v. DePrisco*, 432 F.3d 98, 109–10 (2d Cir. 2005). Only "an affirmative act can amount to a violation of substantive due process, because the Due Process Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Est. of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 424 (S.D.N.Y. 2017) (quoting *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007)). The "affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Cruz v. Cnty. of Ulster*, No. 19-CV-377, 2022 WL 4225220, at *7 (N.D.N.Y. Sept. 13, 2022) (quotation marks and citation omitted). It is not sufficient to allege that "a state actor failed to protect an individual, even from a known danger of bodily harm or failed to warn that individual of such danger . . . [including] dangers arising from private parties." *Est. of M.D. by DeCosmo*, 241 F. Supp. 3d at 425 (citations omitted).

Plaintiffs argue that Defendants engaged in affirmative conduct that increased the danger the Children faced at Young-Dawkins's hands, amounting to deliberate indifference. Plaintiff informed the school administration and Edge that Young-Dawkins could not be left unsupervised with the Children and that she was not permitted to pick them up from the after-school program. Compl. ¶¶ 15–17. Plaintiff provided family court documents to support his admonition. *Id.* ¶ 16. Nevertheless, when Young-Dawkins asked to see the Children, they were produced to her by Edge without supervision. *Id.* ¶ 20. Young-Dawkins escorted the Children out of the building,

past a school safety agent and a police officer. *Id.* ¶ 21. The Complaint alleges that at no point did the Edge staff check on the Children and only noticed their absence after dismissal. *Id.* ¶¶ 22–23.

Although Plaintiffs claim to allege affirmative acts, these allegations demonstrate, at worst, Defendants' passive failures to prevent Young-Dawkins from abducting the Children, which is a far cry from alleging any affirmative conduct on Defendants' part. Even the allegation that Young-Dawkins walked past the police officer who was supposed to sign people into the building, which is framed affirmatively as a failure to train and supervise the individuals charged with supervising the Children, is only an allegation that the officer failed to monitor people entering and leaving the building. The Complaint is devoid of any allegations that any of the Defendants knew that Young-Dawkins intended to abduct the Children or that Defendants affirmatively assisted her in abducting the Children or eluding the authorities. The absence of an implicit communication of official sanction in this case is made further apparent by comparing it to cases in which the Second Circuit has found such a communication to have existed. *See Dwares*, 985 F.2d at 99 (the police expressly told skinheads that they would not prevent or interfere with the skinheads' attack on protesters); *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998) (the police officers gave a handgun to a robbery victim and drove the victim to the scene of the robber's arrest, where the victim shot the robber); *Okin*, 577 F.3d at 430 (police officers responded to prior complaints of domestic violence, failed to intervene, and "openly expressed camaraderie with [the attacker] and contempt for [the victim]"); *Pena*, 432 F.3d at 110–11 (police officers encouraged their colleague to drink excessively prior to driving). Here, there are no allegations of any direct contact between Young-Dawkins and the Defendants, or any affirmative assistance given; the only allegations involve a passive failure to check school records. Plaintiffs have alleged no facts from which an inference could be drawn that Defendants communicated to

Young-Dawkins that they approved her conduct, either explicitly or implicitly.

In short, Plaintiffs have not alleged facts sufficient to establish that they were injured by a state-created danger.

### 3. Egregious and Outrageous Conduct

Even if Plaintiffs had adequately alleged facts to draw these circumstances under either of the exceptions discussed above, the Court would still dismiss the Section 1983 claims for failure to allege facts that rise to the level of egregious and outrageous conduct required to state a substantive due process claim. A plaintiff must allege facts indicating that the defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Matican*, 524 F.3d at 155 (citation omitted). When determining whether the conduct was egregious and outrageous, the focus of the analysis is on the defendants' conduct, not the conduct of the private actor inflicting harm on the victim. *See Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 191–92 (D. Conn. 2016).

Although the Court is sympathetic to the trauma Plaintiffs endured when they were separated from each other for nine months during which time Plaintiff did not know where his Children were, the Court cannot say, as a matter of law, that Defendants' actions "shock the conscience." Defendants' actions were undoubtedly negligent; however, "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. Plaintiffs argue that Defendants' conduct was egregious and outrageous because they acted with deliberate indifference. Pl. Opp at 15–16. But deliberate indifference does not shock the conscience "in the context of a time-sensitive emergency" or where the state actors are subject to the "pull of competing obligations." *Matican*, 524 F.3d at 158–59 (citations omitted). Moreover, deliberate indifference "requires proof that the defendant focused upon the risk of unconstitu-

9

tional conduct and deliberately assumed or acquiesced in such risk." *Pena*, 432 F.3d at 114 (citations omitted). Thus, even if deliberate indifference were adequate to state a claim, the Complaint contains only a conclusory statement that Defendants' actions were undertaken "intentionally, recklessly, and with wanton dishonesty." Compl. ¶ 59. The Court does not assume the truth of legal conclusions in determining a motion to dismiss, only the truth of well-pled factual allegations. There are no such facts alleged in the Complaint.

Accordingly, because the Complaint does not allege facts necessary to make Defendants liable for the acts of a private person, Count Two must be dismissed for failure to state a claim.

### B. Count One: Failure to Investigate

Plaintiffs also allege that the City failed to "properly investigate the incident." Compl. ¶¶ 38–39, 54.

The U.S. Constitution does not provide individuals with any affirmative right to have the government conduct an investigation of an incident. *DeShaney*, 489 U.S. at 196–97; *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 n.105 (S.D.N.Y. 2008) (collecting cases) (Courts within the Second Circuit have concluded that there is "no constitutional right to an investigation by government officials.").

The Complaint alleges that an officer from the missing persons unit told Plaintiff that "the 103rd precinct closed his case prematurely without conducting a proper investigation." Compl. ¶ 28. Assuming, as the Court must, that fact is true, it does not alter the outcome. *See Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 363 (S.D.N.Y. 2007) (citing *DeShaney*, 489 U.S. at 195–96) ("[T]he Fourteenth Amendment does not impose an affirmative obligation upon the police to take action against an alleged perpetrator in response to a civilian report.").

To state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Absent a custom, policy, or practice, a municipality cannot be held liable on a *respondeat superior* basis for the torts of its employees. *Id.* (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).

Because Plaintiffs failed to state a claim that Defendants violated their constitutional rights, there is no constitutional violation to support Plaintiffs' municipal liability claim. *See Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *6 (S.D.N.Y. July 12, 2012) ("Because the Court has concluded that [plaintiff's] constitutional rights have not been violated, his claim of municipal liability pursuant to *Monell* is, *a fortiori*, also meritless."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

Because the government's refusal to investigate a crime does not violate the Constitution, Count One fails to state a claim.

## IV. Plaintiffs' State Law Claims

Having dismissed Plaintiffs' federal claims, the Court must consider whether it should exercise supplemental jurisdiction over their state claims. The Supreme Court and the Second Circuit have held that, when federal question jurisdiction is invoked, and the federal claims are dismissed, the state law claims should usually be dismissed as well. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Because the Court has dismissed Plaintiffs' federal claims, and there is no

11

other basis for federal jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

Defendants assert that the Court should remand Plaintiffs' state law claims to state court. Defs. Mem. at 14, Dkt. 16. The Court lacks the authority to remand the case because the case was initially filed in federal court, not state court. *See Levin v. Com. Energy, Inc.*, 560 U.S. 413, 428 (2010). *See also Schiffman v. Epstein*, No. 04-CV-2661, 2009 WL 1787760, at *5 (S.D.N.Y. June 23, 2009) ("[t]he power of a federal district court to remand a case to state court, however, is limited to instances where an action is commenced in state court and subsequently removed to federal court"); *Uddin v. Rock Arch & Eng Corp.*, No. 21-CV-10900, 2023 WL 348470, at *1 (S.D.N.Y. Jan. 19, 2023). Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

## V.     Leave to Amend

Plaintiffs request, in the alternative, leave to amend the Complaint. Pl. Opp. at 26. Although leave to amend should generally be "freely give[n]," Fed. R. Civ. P. 15(a)(2), "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citation omitted). Here, amendment would be futile because "[t]he problem with [Plaintiffs'] causes of action is substantive." *Owoyemi v. Credit Corp. Sols. Inc.*, 596 F. Supp. 3d 514, 521 (S.D.N.Y. 2022) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). The Complaint does not plead a substantive due process violation, as the U.S. Constitution does not require a state affirmatively to protect its citizens from malfeasance by private actors, *DeShaney*, 489 U.S. at 195, and does not require a state to investigate incidents, including crimes, reported by its citizens, *Bernstein*, 591 F. Supp. 2d at 460. Accordingly, an amendment of the federal claims would be futile; leave to amend is, therefore, denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' federal claims is GRANTED, and those claims are dismissed with prejudice. All state law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the open motion at docket entry 15 and close the case.

**SO ORDERED.**

**Date: March 4, 2025**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**